**Eva VAN SCHIJNDEL,
et al., Plaintiffs,**

v.

**The BOEING COMPANY,
et al., Defendants.**

**No. CV 02 2530 GAF(RCX).**

United States District Court,
C.D. California.

May 1, 2006.

Kevin M. McGuire, Manly & McGuire, Costa Mesa, CA, Floyd A. Wisner, Donald J. Nolan, Nolan Law Group, Chicago, IL, for Plaintiff.

Patrick G. Rogan, Crowe & Rogan, J. Michael Crowe, Chung Hae Han, Perkins Coie, Santa Monica, CA, Ronald A. McIntire, Katherine L. Hilst, Perkins Coie, Keith Gerrard, Seattle, WA, Greg T. Hill, Alan H. Collier, James W. Hunt, Mendes & Mount, Los Angeles, CA, for Defendants.

## MEMORANDUM AND ORDER REGARDING DEFENDANTS' MOTION TO DISMISS ON FORUM NON CONVENIENS GROUNDS

FEESS, District Judge.

### I.

### INTRODUCTION

This action involves the crash of Singapore Airlines ("SIA") Flight SQ006 on October 31, 2000 at Chiang Kai–Shek International Airport in Taipei, Taiwan. Flight SQ006 collided with construction equipment when it attempted to take off from a runway that had been closed for repairs. Eighty three people died, approximately 71 were injured, and the aircraft was destroyed. Multiple Plaintiffs sued Defendants Boeing Company ("Boeing") and Goodrich Corporation ("Goodrich") (collectively, "Defendants") in this forum seeking to hold Defendants liable on products liability theories for the injuries from the crash.

On February 6, 2004, the Court dismissed Plaintiffs' claims on *forum non conveniens* grounds, finding that the Country of Singapore, among others, was an available alternative forum for this case and that the private and public interest factors favored dismissal. The van Schijndel group ("Plaintiffs") appealed, and on November 15, 2005 a divided panel of the Ninth Circuit reversed the Court's ruling and remanded the case to this Court for further proceedings. Among other things, the Circuit concluded that the Court identified three possible fora where the case could be more conveniently litigated, when it should have determined whether any single forum would have been a more convenient forum than the district court in Los Angeles.

Defendants have now renewed their motion to dismiss on *forum non conveniens* grounds. In conformance to what they understand to be the significance of the Ninth Circuit's ruling, they contend that this Court is an inconvenient forum for the litigation of Plaintiffs' claims and that the balancing of private and public interest factors favors litigation in Singapore which is an available forum. Plaintiffs maintain that the Court should not even consider the motion, or that if it does, the resolution of the forum issue is dictated by the Ninth Circuit's ruling. In sum and substance, Plaintiffs claim that the Ninth Circuit has ruled that the *forum non conveniens* mo-

tion should have been denied and that the Court cannot reconsider the issue in light of its decision. In addition to arguing these points, both parties also re-address the applicable factors in the *forum non conveniens* analysis anew, understanding that the circumstances of this case have changed since the Court ruled in 2004. Accordingly, the Court must first determine whether the Circuit's ruling bars further consideration of the *forum non conveniens* question. If not, then the Court must conduct the analysis again, but now in light of the circumstances that currently confront the Court.

The Court has carefully considered the substance of the Ninth Circuit opinion and reassessed this case in light of the instructions and the substantially changed circumstances here—most particularly the fact that only the van Schijndel Plaintiffs, citizens of the Netherlands, are still involved in this action, and the location of fundamental evidence. The Court concludes that the Ninth Circuit held only that the Court erred in the manner in which it conducted its analysis, but did not intend to preclude the Court from further consideration of the issue in light of its ruling. Having therefore concluded that it may consider the motion, and having reviewed the parties' submissions in view of the Circuit's order and the changed circumstances in this case, the Court concludes that Defendants' motion to dismiss should be **GRANTED** because Singapore is an available alternative forum for the trial of Plaintiffs' claims, and the applicable public and private interest factors strongly favor dismissal.

## II.

## BACKGROUND

### A. THE COURT'S DISMISSAL ON FORUM NON CONVENIENS GROUNDS

On February 6, 2004, the Court dismissed the claims of 93 plaintiffs in 13 actions, including the van Schijndel group, because, among other reasons, Plaintiffs had initiated a lawsuit against Singapore Airlines, Ltd. ("SIA") in Singapore and Defendants had agreed to submit to that forum. (*See* Han Decl. ¶ 3 & Ex. A [02/06/04 Order] at 10:16–18; Xavier Decl. ¶ 9 & Ex. D [Database Search Result]). In addition, the Court found that private and public interest factors favored dismissal. The Court noted that "all of these plaintiffs have sued Singapore Airlines in other jurisdictions, thus a forum exists in which the claims can be resolved in a single action against all defendants. This fact provides a compelling reason not to put Boeing in the position of having to defend against claims where the principally liable defendants are not present." (Han Decl., Ex. A [02/06/04 Order] at 10:12–16).

On March 24, 2004, the Court denied the motion to reconsider the *forum non conveniens* dismissal. This motion was filed by plaintiffs in eight of the dismissed actions, including the van Schijndel Plaintiffs.

### B. THE NINTH CIRCUIT DECISION

Only the van Schijndel Plaintiffs, all of whom are citizens of the Netherlands appealed the Court's February 6, 2004 ruling to the Ninth Circuit. (Han Decl. ¶ 3). In an unpublished opinion on November 15, 2005, a majority of the three-member panel—Judges Reinhardt and Berzon—reversed and remanded, identifying three errors in the ruling. The majority indicated that "*[f]or several reasons*, we conclude that the district court's assessment of the relevant factors was not reasonable and, therefore, that the dismissal constituted an abuse of discretion." (*Id.*, Ex. B [11/15/05 Ninth Circuit Opinion] at Bates 16) (citing *Ravelo Monegro v. Rosa*, 211 F.3d 509, 511 (9th Cir.2000) (emphasis added)).

"A district court may abuse its discretion by relying on an erroneous view of the law, by relying on a clearly erroneous assessment of the evidence, or by striking an unreasonable balance of relevant factors." *Ravelo Monegro,* 211 F.3d at 511 (citations omitted). The court stated in its conclusion that *"[t]hese three errors* in the district court's overall approach to its *forum non conveniens* analysis so affected the court's balance of the private and public interest factors as to render that balance unreasonable." (Han Decl., Ex. B [11/15/05 Ninth Circuit Opinion] at Bates 19 (emphasis added)). "Therefore, we REVERSE the district court and REMAND for further proceedings consistent with this disposition." (*Id.*). Judge Kozinski filed a dissenting opinion in which he argued that the Court had not erred, or that if it did, the errors did not warrant reversal.

### 1. The Need to State Plaintiffs' Claim as a Products Liability Theory

The Ninth Circuit indicated that this Court in its opinion had "misstate[d] the plaintiffs' theory" as being a theory of aircraft integrity rather than products liability, and that "the difference between these theories is material with respect to several key inquiries pertinent to the *forum non conveniens* question, including which evidence and witnesses are material and whether the products liability case would be more conveniently heard in the same location as the case against Singapore Airlines." (*Id.* at Bates 17). The action is in fact "premised on the malfunctioning of the allegedly flawed design and manufacture of the plane's emergency and evacuation equipment, not the 'integrity of the aircraft' itself on impact." (*Id.* at Bates 17). Judge Kozinski, citing to the record, pointed out that the Court had not misunderstood the Plaintiff's theory of the case, even if the Court's brief background

discussion of the theory could have been stated more artfully. (*Id.* at Bates 20) (Kozinski, J., dissenting) (citing ER 57 ("Indeed, what I know and what I'm growing to know more and more about in terms of the accident itself might make me raise by eyebrows about claims of product liability, but I do know that there are at least issues pertaining to the exits, and I guess the emergency shoots [sic] and so forth and so on.")). Suffice it to say that the Court understood then, and understands now, that Plaintiffs allege a products liability theory with respect to certain of the aircraft's safety and emergency equipment. (*See, e.g.,* Han Decl., Ex. A [02/06/04 Order] at 4:21–22 ("Boeing and Goodrich have been sued in this case on product liability theories relating to the crashworthiness of the aircraft.").

### 2. The Need to Select a Single Alternative Forum

The Ninth Circuit also stated that it was unclear in the Court's opinion *which* alternative forum—Singapore, Canada, or Taiwan—the Court ultimately found to be "both adequate and more convenient than the domestic forum chosen by plaintiffs." (Han Decl., Ex. B [11/15/05 Ninth Circuit Opinion] at Bates 17). Because the Court identified three fora, "the [C]ourt failed to balance the competing interests fairly by comparing the domestic forum to *a particular foreign forum.*" (*Id.* (emphasis added)). The court explained:

> This defect is of great significance on the facts of the case, as the crash took place in Taiwan, the airline is headquartered in Singapore, and the relevant witnesses appear to reside in Singapore, Taiwan, the United States, and elsewhere. Additionally, at the time of this appeal, the only remaining plaintiffs are from the Netherlands. Consequently, unlike in *Piper Aircraft [Co.,* 454 U.S. at 238–41, 257–61], 102 S.Ct. 252, *Lueck[ v.*

*Sundstrand Corp.,* 236 F.3d 1137, 1143–48 (9th Cir.2001) ], and *Cheng[ v. Boeing Co.* 708 F.2d 1406, 1410–12 (9th Cir. 1983) ], it is far from evident that there is any *single* alternative forum more convenient than the United States.

(*Id.* at Bates 18 (emphasis in original)). In each of *Piper Aircraft Co., Lueck* and *Cheng,* the court was only asked to address the merits of a single alternative forum, and the analysis therefore proceeded along those lines. Accordingly, the Ninth Circuit was troubled that the record had not adequately identified a ***single alternative forum*** that actually met the applicable requirements for *forum non conveniens* dismissal in this case, as had been found in *Piper Aircraft Co., Lueck* and *Cheng.*

### 3. THE DISTINCTION BETWEEN A CASE AND AN ACTION

The Ninth Circuit also indicated that this Court's "statement in its dismissal order that a joint trial of Boeing and Singapore Airlines could risk prejudice to *each* defendant does not comport with the finding, in the same order, that the existence of various foreign fora, in each of which all claims might be resolved *in a single action,* supported dismissal." (*Id.* at Bates 18 (emphases in original)). Judge Kozinski noted that this issue was not briefed and should not have been considered, and that the majority failed to appreciate that the Court was drawing a distinction between an ***action*** and a trial, and indicated that holding only a single ***trial*** could result in prejudice. (*See id.* at Bates 22–24 (Kozinski, J., dissenting); *id.,* Ex. A [02/06/04 Order] at 5:4–18).

### III.

### STATEMENT OF FACTS

### A. *THE CRASH OF SQ006*

SIA Flight SQ006 crashed on October 31, 2000 at Chiang Kai–Shek International Airport in Taipei, Taiwan on take off from a runway that was closed due to construction. Eighty three people died, approximately 71 were injured, and the aircraft was destroyed. (Han Decl., Ex. D [ASC Aircraft Accident Report for 10/31/00 Crash] at Bates 47).

The accident investigation was headed by Taiwan's Aviation Safety Council ("ASC"), which concluded that the probable cause of the accident was the SIA flight crew's "los[s of] situational awareness and commenc[ing] takeoff from the wrong runway." (*Id.* at Bates 59). The ASC also found that the airport and SIA had additional roles in the accident, for example through inadequate markings for the closed runway and lack of formal training for low visibility taxiing, respectively. (*Id.* at 59–62).

The Singapore Ministry of Transport analyzed the accident as well and concluded that the Airport conditions such as deficient runway markings predominated in causing the accident. (*Id.,* Ex. E [Singapore Ministry of Transport Analysis of the 10/31/00 Accident] at Bates 82, 84–86). Even Plaintiffs concede that "Boeing and Goodrich did not cause the crash of SQ006." (*Id.,* Ex. J [Certain Pls.' 3/10/03 Mem. in Opp. to Defs.' Mot. to Dismiss on *Forum* Grounds] at 88:21–23 (emphasis added)).

### B. *THE MANUFACTURE AND DESIGN OF THE AIRCRAFT AND ITS DELIVERY TO SIA*

This is a products liability case. Plaintiffs' claims against Boeing center on the fuel and escape systems installed on the aircraft. It is undisputed that all of the relevant activity involving the subject aircraft's design, manufacture, testing, certification and assembly occurred outside the State of California. (*See* Han Decl. ¶ 8 & Ex. F [02/06/03 Lie Decl.] ¶ 2; Opp. at 5). Specifically, the fuel system and the rest of

the airplane were assembled in Everett, Washington. (Han Decl. ¶ 5). In addition, Goodrich manufactured the components of the evacuation systems in West Virginia. (Collier Decl. ¶ 3 & Ex. A [Yribarren 02/07/03 Decl.] ¶¶ 3, 5). Goodrich then shipped the evacuation system components to Boeing in Everett, Washington, where Boeing installed them. (*Id.* ¶ 3 & Ex. A [Yribarren 02/07/03 Decl.] ¶ 6; Han Decl., Ex. F [02/06/03 Lie Decl.] ¶ 6). Thereafter, Boeing delivered the subject aircraft to SIA on January 21, 1997. (*Id.*, Ex. F [02/06/03 Lie Decl.] ¶ 4).

Records relating to the design of the Boeing 747–400 series aircraft are located in the State of Washington. (Han Decl., Ex. F [02/06/03 Lie Decl.] ¶ 3). Records relating to the manufacture of the evacuation systems are located in Phoenix, Arizona. (Collier Decl., ¶ 3 & Ex. A [Yribarren 02/07/03 Decl.] ¶ 8).

### C. LAWSUITS IN SINGAPORE

On October 20, 2002, Plaintiffs filed a lawsuit against SIA in Singapore. (*See* Xavier Decl. ¶ 9 & Ex. D [Database Search Result]). Plaintiffs have not sued Boeing or Goodrich in Singapore, and they did not do so even after Boeing and Goodrich agreed to submit to jurisdiction in Singapore as a condition of the Court's February 6, 2004 *forum non conveniens* dismissal. (*See* Han Decl., Ex. A [02/06/04 Order] at 10:18–22).

Plaintiffs' counsel indicated at the status conference on February 6, 2006 that they have "partially" settled their Singapore suit with SIA. Plaintiffs now submit testimony that Plaintiffs reached a settlement with SIA on October 24, 2005. (Ramiah Decl. ¶ 3). Plaintiffs have not provided any information to Defendants about the settlement except to represent that Defendants will not be included as releasees. (*See* Han Decl. ¶ 12 & Ex. I [Attorneys' e-mail exchange]).

At the same time, the Singapore suit remains open. (*See* Xavier Decl. ¶ 10). "However, the file may no longer be inspected unless permitted by the Court or with the consent of the parties." (*Id.*). Plaintiffs explain that "[t]he said action involved minor Plaintiffs and is currently pending before the High Court [of Singapore] only for the purposes of satisfying the procedures required for the approval and payment of the settlement amount." (Ramiah Decl. ¶ 4).

The SIA cabin crew's lawsuits against SIA are still currently proceeding in Singapore. (Xavier Decl. ¶ 11 & Ex. E [Database Search for Writs of Summons]). These plaintiffs, represented by one of the law firms that represents Plaintiffs here, originally filed suit in Los Angeles Superior Court, but the court dismissed the claims on *forum non conveniens* grounds and this decision was unanimously affirmed on appeal. (Mot. at 7; *see* Han Decl. ¶ 5 & Ex. C [04/05/05 Opinion in *Subhas Anandan, et al. v. Singapore Airlines Limited, et al.*, No. B175069]). Thereafter, the cabin crew cases were filed in Singapore in October 2005 and on February 1, 2006. (Xavier Decl. ¶ 11 & Ex. E [Database Search for Writs of Summons]). Plaintiffs' Singapore counsel represents all but two of the cabin crew plaintiffs in their Singapore lawsuits. (*See* Reply at 2 (citing Ramiah Decl. ¶¶ 1, 5; Xavier Decl. at Bates 26, 29, 31, 33, 35, 37, 39, 41, 43, 45, 47, and 50 (listing this law firm as Plaintiffs' counsel of record))).

The cabin crew plaintiffs' lawsuits would likely be consolidated with one another if they proceeded to trial, and a Singapore court could consolidate these cases with the van Schijndel case because common questions of law or fact would arise in the actions. (*See* Xavier Decl. ¶ 12 & Ex. F [Singapore Rules of Court, Order 15]). In contrast, Plaintiffs acknowledge that there

are no other cases arising from this accident in this Court. (*See* Opp. at 2:25–26 ("[T]here is only one case pending before this Court for consideration on these proceedings."); Reply at 6).

## D. DEFENDANTS' INCLUSION IN THE SQ006 LAWSUITS

Defendants' counsel declare that "[i]n every case where plaintiffs named [Defendants] along with SIA ..., plaintiffs voluntarily dismissed [Defendants] after reaching a settlement with SIA without receiving any consideration from [Defendants] for the dismissal. [Neither Defendant] has ... paid any money in settlement in any of the cases arising from the crash of Flight SQ006 where it was named as a defendant." (Collier Decl. ¶ 4; Han Decl. ¶ 10).

## E. CONDITIONS OF DISMISSAL

Defendants assert that in order to facilitate the process in this case, they agree as conditions of dismissal to: (1) consent to a Singapore court's jurisdiction in an action re-filed by these Plaintiffs; (2) waive any statute of limitations defense that might apply to such re-filed claims for 60 days after *forum non conveniens* dismissal; (3) make available in a re-filed action any evidence or witnesses in their possession custody, or control that the Singapore court may deem appropriate; and (4) pay any final, post-appeal judgment awarded against them by a Singapore court in the refiled action. (Mot. at 1; Han Decl. ¶ 2; Collier Decl. ¶ 2). Defendants also submit testimony that if the lawsuit were initiated in Singapore, "[t]he High Court of Singapore would take jurisdiction over Boeing and Goodrich, and honor their agreement" as to each of these conditions. (Xavier Decl. ¶ 14).

## IV.

## DISCUSSION

### A. THE PRESENT MANDATE

Defendants characterize the Ninth Circuit's decision as "revers[ing] and remand[ing] to this Court to reconsider and correct three purported errors in the Court's February 6, 2004, Order." (Mot. at 1 (emphasis added)). They add that "[t]he correction of these purported errors does not change the conclusions that Singapore is an available alternative forum, and that the private and public interest factors favor dismissal." (*Id.*). Plaintiffs take issue with this characterization and state instead that "the Ninth Circuit flat-out reversed the decision of the Court granting defendants' motion to dismiss on the ground of *forum non conveniens* and, as would naturally be the case, remanded for further proceedings 'consistent with this disposition.'" (Opp. at 3 (quoting Han Decl., Ex. B [11/15/05 Ninth Circuit Opinion] at Bates 19)). Plaintiffs continue that "[t]hus, the Ninth Circuit[ ] rendered a dispositive decision once and for all ending the *forum non conveniens* proceedings in this Court." (Opp. at 3).

Based on the specific language of the Ninth Circuit opinion, the Court agrees with Defendants. The most reasonable reading of the Ninth Circuit opinion is that the panel was concerned with the three specific issues it identified but not with other aspects of the Court's ruling, which is why the panel enumerated and assessed each of these reasons individually and the effects of each issue on the Court's analysis, and did not disturb the remainder of the Court's ruling or state that the dismissal issue could not properly be reconsidered—especially given the changed posture of the present case. The Ninth Circuit concluded that this Court's "assessment of the relevant factors was

not reasonable" specifically "for several reasons" or deficiencies in clarity which the Ninth Circuit identified and explained, and not on any other bases. (*See* Han Decl., Ex. A [11/15/05 Opinion] at Bates 16 (citation omitted)).

Accordingly, the Court will proceed with the *forum non conveniens* analysis based on the circumstances as they now present themselves. The Court is sensitive, however, to addressing the three concerns that the Ninth Circuit explained. Accordingly, the Court: (1) tailors its considerations to the products liability theory which Plaintiffs are pursuing; (2) only analyzes a single specific alternative forum—Singapore—in order to respond to the lack of explication in the previous ruling with respect to which public and private interest factors applied to which alternative fora; and (3) assesses the prejudice concerns in this case with respect to the *trial* of Boeing and SIA in separate fora, noting that a single action may encapsulate joint or separate trials and that adjustments can be made in order to prevent prejudice to any party.

## B. THE LEGAL STANDARD GOVERNING FORUM NON CONVENIENS DISMISSAL

■ "A party moving to dismiss based on *forum non conveniens* bears the burden of showing[:] (1) that there is an adequate alternative forum[;] and (2) that the balance of private and public interest factors favors dismissal." *Dole Food Co., Inc. v. Watts,* 303 F.3d 1104, 1118 (9th Cir.2002). Thus, the Court begins with a presumption in favor of the plaintiff's choice of forum, particularly in the case of a domestic plaintiff and defendant. *See, e.g., Peregrine Myanmar Ltd. v. Segal,* 89 F.3d 41, 46 (2d Cir.1996); *Cheng,* 708 F.2d at 1410. In the case of a foreign plaintiff, the choice of forum "deserves less deference" than that of a citizen plaintiff, and therefore less showing is required to obtain a *forum non conveniens* dismissal.

*Piper Aircraft Co.,* 454 U.S. at 256, 102 S.Ct. 252. But even under the lesser deference standard, dismissals for *forum non conveniens* are "to be employed sparingly" because the doctrine does not "compel[ ] plaintiffs to choose the optimal forum for their claim." *Ravelo Monegro,* 211 F.3d at 514; *Dole Food Co.,* 303 F.3d at 1118.

■ The presumption in favor of the plaintiff's choice of forum may be rebutted through a clear showing of facts which either: "(1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent[;] or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems." *Koster v. Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947); *Ravelo Monegro,* 211 F.3d at 514; *Cheng,* 708 F.2d at 1410. Whether such a showing has been made is determined by an analysis of the so-called "private" and "public" interest factors.

## C. ANALYSIS OF FORUM NON CONVENIENS FACTORS

### 1. THE ADEQUACY OF SINGAPORE AS AN ALTERNATIVE FORUM

■ The first step of the *forum non conveniens* analysis is Defendants' showing that an adequate alternative forum is available. *Dole Food Co.,* 303 F.3d at 1118. If this prong of the test is satisfied, then the Court weighs the private and public interest factors in making its determination about dismissal. *Id.* In the Ninth Circuit:

The key determination is whether 'the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all.' ... This requirement is generally satisfied if

the defendant is amenable to service of process in the alternative forum....

*Creative Tech. v. Aztech Sys. Pte*, 61 F.3d 696, 701 (9th Cir.1995) (quoting *Piper Aircraft Co.*, 454 U.S. at 254 & n. 11, 102 S.Ct. 252); *see also Lockman Found.*, 930 F.2d at 768–69.

Defendants argue that an adequate alternative forum—Singapore—clearly exists here, and note that Plaintiffs have already availed themselves of it by filing their suit against SIA in that forum, demonstrating their familiarity with the legal processes there. (Mot. at 13 (citing Xavier Decl. ¶ 9 & Ex. D [Database Search Result] )). Defendants add that even if Plaintiffs had not so availed themselves, Defendants satisfy this prong of the test because they are amenable to service of process in the alternative forum. (*Id.*). Defendants are willing to submit, as conditions of dismissal by this Court, to personal jurisdiction in Singapore and to waive any applicable statute of limitations for 60 days after dismissal, which conditions Defendants maintain—and Plaintiffs do not dispute—Singapore courts would accept. (*See* Han Decl. ¶ 2; Collier Decl. ¶ 2; Xavier Decl. ¶ 14; *id.* ¶ 8 & Ex. C [Limitation Act, Section 4] (statute of limitations may be waived if it is not raised)).

Where a defendant agrees to submit to the jurisdiction of a foreign forum, the Ninth Circuit has declined to undertake a detailed analysis of the jurisdictional law of the foreign forum. *See, e.g., Miskow v. Boeing Co.*, 664 F.2d 205, 208 (9th Cir. 1981). However, Defendants properly also address the remedy question, maintaining that Plaintiffs would have an adequate remedy in Singapore. (Mot. at 14). As evidence for this proposition, Defendants cite to Plaintiffs' settlement with SIA and the fact that Singapore's civil proceedings derive from the English common law. (*Id.* (citing Xavier Decl. ¶¶ 3–8 (describing litigation process in Singapore))).

Based on these points and because Plaintiffs do not dispute this issue, the Court concludes that Singapore is an adequate alternative forum and Defendants meet their burden of establishing this prong of the *forum non conveniens* test. By focusing on this single forum as opposed to three potential fora, moreover, the Court responds to the Ninth Circuit's concern in its November opinion. (*See* Han Decl., Ex. B [11/15/05 Ninth Circuit Opinion] at Bates 17–18; Mot. at 14). Notably, Plaintiffs do not argue at any point that Singapore is not an adequate alternative forum, or that this alteration in the analysis will not properly respond to the Ninth Circuit's second concern. (*See* Opp.; Reply at 2, 8).

### 2. PRIVATE INTEREST FACTORS

#### a. The Legal Standard

■ The private interest factors that the Court considers in a *forum non conveniens* analysis include: (1) the relative ease of access to sources of proof; (2) residence of the parties and witnesses; (3) availability of compulsory process for attendance of witnesses; (4) costs of bringing willing witnesses and parties to the place of trial; (5) access to physical evidence and other sources of proof; (6) enforceability of judgments; and (7) "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp.*, 330 U.S. at 508, 67 S.Ct. 839; *Contract Lumber Co. v. P.T. Moges Shipping Co. Ltd.*, 918 F.2d 1446, 1449 (9th Cir.1990).

#### b. Analysis

■ Defendants argue that the private interest factors in this case favor dismissal, as the Court found that they did in 2004. Because only the van Schijndel Plaintiffs' case remains pending and the circum-

stances have changed, the Court assesses each factor in turn.

*(i) Relative Ease of Access to Sources of Proof*

Plaintiffs' theory in this case is one of products liability. The Court will compare the availability of evidence in the United States with that in Singapore as required by *Lueck*, 236 F.3d at 1146, with specific attention to this theory. Based on this analysis, the Court concludes that this factor weighs strongly in favor of dismissal.

A Singapore court has the best access to evidence in this case because Singapore is the center of the Flight SQ006 litigation. It is undisputed that the primary cause of the accident was the SIA flight crew's loss of situational awareness in attempting to take off from a closed runway. Moreover, the Singapore court would have access to the same evidence as the American court in terms of: (1) damages evidence from Plaintiffs, which is already in Singapore and which this Court would need to gather anew; and (2) all of the evidence within Defendants' possession, custody, and control.

In addition, the Singapore court would have access to the following evidence *which this Court could not control*: (1) testimony of the three flight crew members, whose loss of situational awareness was blamed for the crash at least by the Taiwanese authorities, and who are believed to be residents of Singapore; (2) SIA witnesses and records concerning the training and qualifications of the flight crew and cabin crew; (3) SIA training and operations manuals and personnel; (4) other evidence in the possession, custody or control of SIA, which is headquartered in Singapore; (5) evidence produced in the course of the Singaporean accident investigation; (6) evidence obtained during the course of Plaintiffs' Singapore lawsuit, including evidence relating to damages

claimed; and (7) evidence from the SIA cabin crew lawsuits, which includes testimony of the cabin crew plaintiffs. (*See* Mot. at 16; Han Decl. ¶ 5). Even in a products liability case, Defendants are properly interested in contributory causes of any of Plaintiffs' injuries.

In *Dahl v. United Techs. Corp.*, 632 F.2d 1027 (3d Cir.1980), which Defendants cite, the court affirmed dismissal in part where the defendant agreed to produce all of the design and manufacture evidence in the foreign forum, as is also the case here. *See id.* at 1030–31; *see also Lueck*, 236 F.3d at 1146 ("The documents and witnesses in the United States are all under the control of Plaintiffs and Defendants, so they can be brought to court, no matter the forum. The documents and witnesses in New Zealand, however, are not so easily summoned to the United States."); *In re Air Crash Over the Taiwan Straits on May 25, 2002*, 331 F.Supp.2d 1176, 1196–97 (C.D.Cal.2004) (considering parties' control of relevant evidence and willingness to produce it as favoring dismissal); *Gambra v. Int'l Lease Fin. Corp.*, 377 F.Supp.2d 810, 819 (C.D.Cal.2005) (same). Plaintiffs do not comment on how the fact that the products liability evidence is "equally available in Singapore" weakens their position. (*See* Mot. at 17; Opp.; Reply at 9–10).

Moreover, even Plaintiffs' products liability theory has a nexus in Singapore because the accident aircraft had been in SIA's possession for almost *four years* prior to the accident. (Mot. at 17 (citing Han Decl., Ex. F [02/06/03 Lie Decl.] ¶ 4)). In a products liability case such as this one, maintenance records may well be crucial. *See, e.g., Pain v. United Techs. Corp.*, 637 F.2d 775, 786 (D.C.Cir.1980); *Lueck*, 236 F.3d at 1146. Because records concerning the maintenance of the aircraft and its component parts are available in Singapore *but not in California*, (*see* Mot.

at 17 (citing *Lueck*, 236 F.3d at 1146)), the factor of access to sources of proof weighs strongly in favor of dismissal.

In addition, the need for maintenance records effectively rebuts Plaintiffs' contention that "all the evidence and witnesses these defendants need to defend their products already are in their possession and control in the United States, not in the alternative foreign forum defendants conveniently choose, namely, Singapore." (Opp. at 12). As one court observed, "[e]ven if plaintiffs intend to base their case on the negligence of defendants in the planning, design, manufacture, assembly, testing, service and inspection of the aircraft and its engines, *the evidence regarding the crash itself and the actions of BMA are central to the tragedy.*" *Nolan v. Boeing Co.*, 762 F.Supp. 680, 683 (E.D.La.1989) (emphasis added). Defendants properly conclude that evidence in Taiwan will not be available in California *or* Singapore, and it is significant that the Singapore courts have already spent time resolving issues arising from the crash and could consolidate any lawsuits that are pending and utilize economies of scale with respect to these issues. (Reply at 9).

In *Pain*, the D.C. Circuit appraised a similar situation and noted that "[w]ith respect to each of the plaintiffs' causes of action, [the manufacturer]'s ability to prove [the owner-operator]'s fault would constitute an affirmative defense arguably freeing [the manufacturer] from liability." 637 F.2d at 786. In the present case, comparably, Defendants will likely try to prove that SIA improperly maintained the emergency equipment and that Plaintiffs' injuries were caused by the crash itself, the crew's actions, improper maintenance, or other factors and not by the equipment's alleged defect or malfunction. *See, e.g., Lueck*, 236 F.3d at 1146 (noting that "the jury will need to consider the performance of the equipment in relation to

the performance of the flight crew" in order to determine the "relative fault" of the air carrier and manufacturer). Under Plaintiffs' theory, therefore, maintenance records *and* the actions of the cabin crew are quite relevant. As Defendants argue:

> Even according to [P]laintiffs' theories—'aircraft emergency lighting system, which was ineffective, the PA system, which was inoperative, and the emergency slide evacuation slide [sic], where no slide was fully functional'...–involve questions of maintenance, of whether these systems had been properly maintained while in SIA's possession. SIA personnel are relevant as well because the investigative authorities identified numerous SIA procedures that contributed to the accident....

(Reply at 10–11 (citations omitted)).

Moreover, the fact that Boeing may have participated or assisted in some form in the investigation of the crash does not imply that Defendants have access to any of the other records of that investigation, and Plaintiffs do not cite to any evidence or case law in support of this proposition. In addition, any investigation-related evidence or witnesses in Boeing's possession, custody or control will be available in Singapore. The Court notes that suits involving foreign aviation accidents where Boeing and other U.S. officials participated in the accident investigations have been regularly dismissed. *See, e.g., Chhawchharia v. Boeing Co.*, 657 F.Supp. 1157, 1159 (S.D.N.Y.1987); *Nai–Chao v. Boeing Co.*, 555 F.Supp. 9, 12, 18 & n. 11 (N.D.Cal. 1982), *aff'd sub nom. Cheng v. Boeing Co.*, 708 F.2d 1406 (9th Cir.1983).

Finally, the Court notes that "*all* of the U.S. evidence is located outside California." (Mot. at 17 (citing Han Decl., Ex. F [02/06/03 Lie Decl.]; Collier Decl., Ex. A [Yribarren 02/07/03 Decl.]) (emphasis added)); *see, e.g., Gambra*, 377 F.Supp.2d at

819. Indeed, some courts have responded to this factor in evocative terms, such as by stating that "[t]he fact that some evidence concerning the aircraft's design and manufacture may be located *elsewhere in the United States* does not make the Eastern District of Texas a convenient forum." *Torreblanca de Aguilar v. Boeing Co.*, 806 F.Supp. 139, 144 (E.D.Tex.1992) (emphasis added). The D.C. Circuit similarly noted:

> Of course we cannot force the plaintiffs here to seek relief in Norway, the most interested forum. But neither is it clear that the District of Columbia would offer a better forum for vindicating the United States' 'general national interest' in the dispute than another forum within the United States, for example, Connecticut or New Hampshire. We see no reason why retention of jurisdiction is compelled in the District of Columbia when it is apparent that this forum is one of the least convenient forums imaginable.

*Pain*, 637 F.2d at 793. Accordingly, because most of the evidence pertaining to liability in this case is in Singapore and the products liability evidence will be transported there at Defendants' own expense, as discussed above, this factor weighs strongly in favor of dismissal.

*(ii) Residence of the Parties and Witnesses*

Plaintiffs reside in the Netherlands; Defendants are citizens of the United States, though not of California. Accordingly, Plaintiffs analogize primarily to *In re Air Crash Disaster Near Palembang, Indonesia on December 19, 1997*, 2000 WL 33593202 (W.D.Wash. Jan 14, 2000) ("*Palembang*"), and *In re Bridgestone/Fire-*

*stone Inc. ATX, ATX II & Wilderness Tires Prods. Liability Litig.*, 190 F.Supp.2d 1125 (S.D.Ind.2002) ("*In re Bridgestone/Firestone*"), because these cases involved plaintiffs' causes of action against U.S. defendants for the defendants' defective design of their products in the United States. However, although the domicile of the parties if considered alone might cut in favor of the United States as an appropriate forum, the residence of numerous relevant witnesses in Singapore counts strongly in favor of dismissing this action and enabling it to proceed in Singapore. This is clearly demonstrated in Defendants' primary authorities, *Piper Aircraft Co., Lueck, Cheng,* and *Miskow*, all of which are binding on this Court and counsel strongly in favor of dismissal of this case.[1]

Plaintiffs' only apparent objection to Defendants' arguments on this issue is that Defendants have not specifically identified the witnesses who would be available in Singapore but not in the United States. (Opp. at 14). Contrary to Plaintiffs' contentions, however, Defendants' identification of categories of witnesses is sufficient to balance the parties' interests. *See Piper Aircraft Co.*, 454 U.S. at 258–59 & n. 27, 102 S.Ct. 252. Therefore, this factor weighs strongly in favor of dismissal as well.

*(iii) Availability of Compulsory Process for Attendance of Witnesses*

Singapore citizens, located in Singapore, cannot be compelled to testify at a trial in California. (*See* Xavier Decl. ¶ 17). At the same time, Defendants' uncontroverted testimony indicates that if the case were to be tried in Singapore, subpoenas are available to compel attendance of witnesses at

---

**1.** In addition, *In re Bridgestone/Firestone* is distinguishable on two important factual grounds: (1) it involved 700 separate automobile accidents, *approximately 500 of which occurred within the United States*, 190 F.Supp.2d at 1128; and (2) the only alleged tortfeasors were U.S. product manufacturers, *id.*, which is not the case here where SIA admittedly caused the crash.

trial or a deponent ordered to give evidence by way of deposition of Singapore citizens and residents. (*Id.* ¶ 16; *see also id.*, Ex. 38 [Singapore Rules of Court, Order 38, Governing Issuance of Subpoenas in Singapore] ).

As the Supreme Court has observed, "[c]ertainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants." *Gulf Oil Corp.*, 330 U.S. at 511, 67 S.Ct. 839. Moreover, courts continue to affirm that it is not fair to make U.S. manufacturers proceed to trial without foreign witnesses who cannot be compelled to attend. *See, e.g., Piper Aircraft Co.*, 454 U.S. at 242–43, 102 S.Ct. 252; *Lueck*, 236 F.3d at 1146–47; *Carney v. Singapore Airlines*, 940 F.Supp. 1496, 1498, 1502 (D.Ariz.1996).

Among the witnesses who are located abroad and hence beyond the reach of compulsory process in the United States but subject to compulsory process in Singapore, are: (1) former SIA employees, including the three pilots on duty and many of the cabin crew who sued SIA in Singapore; (2) Singaporean accident investigators and other persons involved in the accident investigation; (3) Singaporean witnesses with knowledge of the flight crew's and cabin crew's backgrounds and training; (4) SIA training and operations personnel; and (5) SIA personnel with knowledge of the aircraft's maintenance. *See* Fed.R.Civ.P. 45(c)(3)(A)(ii). Plaintiffs do not dispute that these witnesses are beyond the reach of compulsory process in the United States, or persuasively contest that Defendants might properly rely on their testimony. (*See* Opp.; Reply at 10).

Accordingly, the Court agrees with Defendants that this factor strongly favors dismissal.

*(iv) Costs of Bringing Willing Witnesses and Parties to the Place of Trial*

Even if witnesses might testify voluntarily, courts may still consider the comparative costs of transporting witnesses to a particular forum to testify. *See, e.g., In re Air Crash Over the Taiwan Straits on May 25, 2002*, 331 F.Supp.2d at 1180.

In this case, Defendants maintain that the cost of transporting the Singaporean witnesses, even if they could be persuaded to come to the United States, would be unmanageable. In contrast, they are willing to undertake the costs of transporting to Singapore all of the evidence within their possession, custody, or control. Plaintiffs do not respond to this point, (*see* Opp.; Reply at 10), and this factor weighs in favor of dismissal as well.

*(v) Access to Physical Evidence and Other Sources of Proof*

As mentioned previously, Defendants are willing to transport to Singapore all evidence within their possession, custody and control. Given the uncontroverted testimony above that there are critical witnesses in Singapore, the factor of access to physical evidence and other sources of proof militates in favor of dismissal. Moreover, Plaintiffs do not argue that Singapore does not in fact have the best access to evidence in a number of relevant categories. (*See* Opp.; Reply at 10). Therefore, this factor also favors dismissal.

*(vi) Enforceability of Judgments*

Defendants agree to pay any final, post-appeal judgment awarded against them by a Singapore court in the refiled action. (Mot. at 1; Han Decl. ¶ 2; Collier Decl. ¶ 2). Based on this commitment and because Plaintiffs do not comment on this factor, it is at least neutral with respect to dismissal.

*(vii) Other Considerations*

Defendants argue that allowing Plaintiffs to split their cause of action and sue Boeing and Goodrich in the United States after having sued SIA in Singapore would be prejudicial based on the risks of multiple proceedings, inconsistent results, and forcing Defendants to litigate the accident's cause without SIA's presence. (Mot. at 19). The Court agrees.

*aa. Efficiency*

Actions pending in a foreign forum should be taken into account by courts, as the doctrine of *forum non conveniens* was designed in part to avoid these inconveniences. *See, e.g., Gemini Capital Group, Inc. v. Yap Fishing Corp.,* 150 F.3d 1088, 1094 (9th Cir.1998); *Am. Home Assurance Co. v. TGL Container Lines, Ltd.,* 347 F.Supp.2d 749, 767 (N.D.Cal.2004). In this case, the cabin crew plaintiffs' lawsuits are currently proceeding in Singapore, and these cases could be consolidated with Plaintiffs' case if Plaintiffs' case is dismissed and proceeds there. This possibility weighs in favor of dismissal, since two proceedings investigating the crash of SQ006 would be inefficient and the Singapore court will be proceeding on these issues in any event. *See, e.g., Lockman Found. v. Evangelical Alliance Mission,* 930 F.2d 764, 770 (9th Cir.1991) (describing importance of preventing "fragmented litigation").

*bb. Prejudice*

The Court also concludes that, if the case were to proceed to trial in Los Angeles, the absence of SIA, the party that Plaintiffs acknowledge was primarily responsible for the accident, creates the risk of significant prejudice to Boeing and Goodrich. (*See* Han Supp. Decl., Ex. A [SIA's 04/28/03 Withdrawal of Article 20 Defense] at Bates 19–20). As one court observed, *"the trier of fact cannot be expected to evaluate fairly the relative liability of parties not present at the trial."* *Nai–Chao,* 555 F.Supp. at 19 (emphasis added). In the same vein, the Eleventh Circuit has noted:

> MDC intends to avoid liability by arguing that other entities were responsible for the air crash. Such an accusation is surely less persuasive when aimed at a set of empty chairs. If a Southern District of Florida jury ultimately looked to place blame at the defense table, it would have available only one, rather than several, defendants to bear the brunt of its verdict and damage award.

*Satz v. McDonnell Douglas Corp.,* 244 F.3d 1279, 1284 n. 4 (11th Cir.2001). Presumably also for this reason, Judge Snyder recently concluded that "the fact that [the foreign airline] cannot be compelled to appear as a defendant in the United States is a substantial consideration weighing in favor of dismissal." *Gambra,* 377 F.Supp.2d at 823. The same is true here.

Moreover, the fact that the SIA parties are available to attend trial in Singapore but not in California resolves the Ninth Circuit's third assignment of error in this case. The Supreme Court has explicitly found that parties' inability to implead potential third-party defendants can "clearly support[ ]" dismissal based upon *forum non conveniens. Piper Aircraft Co.,* 454 U.S. at 259, 102 S.Ct. 252. As to the question of whether impleading would be possible here, Defendants acknowledge that only one published decision has addressed the issue of whether a U.S. products manufacturer can bring an indemnity claim against a foreign air carrier when the plaintiff passengers did not have U.S. jurisdiction over the carrier pursuant to Article 28 of the Warsaw Convention, which is the case here. (*See* Mot. at 21 & n.13). The District Court for the Eastern District of New York concluded that such claims *could* be brought. *In re Air Crash*

*near Nantucket Island, Mass.*, 340 F.Supp.2d 240, 244 (E.D.N.Y.2004) (*"Nantucket Island "*). However, this decision is not binding on the Court and it is not clear how the Ninth Circuit would rule on the issue.

Moreover, Defendants properly argue that *Nantucket Island* is distinguishable from this case. If Defendants here tried to bring indemnity and contribution claims against SIA, SIA could move to show that its settlement was in good faith and if this motion were granted, Defendants could not seek contribution and indemnity. Cal. Civ.Proc.Code § 877.6(c) ("A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault."); (*see* Mot. at 21). Thus, Defendants fear that they would end up being unable to pursue the recovery they would seek, even after expending resources in litigating the issue of Section 877.6(c). (Mot. at 21–22). In contrast, Defendants could bring indemnity claims against SIA in Singapore, (*see* Xavier Decl. ¶ 13 & Ex. G [Excerpts from Singapore Civil Law Act]).

But even if indemnity claims could not be brought in Singapore, Defendants could obtain third-party discovery from SIA in Singapore, which would be useful in any event. (*See* Mot. at 22). As mentioned above, as well, SIA is currently defending against the cabin crew lawsuits in Singapore, and Singapore Rules of Court allow for consolidation of proceedings brought by separate parties where common questions of law or fact arise in the actions. (*See* Xavier Decl. ¶¶ 11–12 & Exs. E [Database Search for Writs of Summons] & F [Singapore Rules of Court, Order 15]).

For all of these reasons, this factor also weighs strongly in favor of dismissal.

### 4. PUBLIC INTEREST FACTORS

#### a. The Legal Standard

■ The public interest factors that the Court considers in a *forum non conveniens* analysis include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having the matter decided locally; (3) familiarity with governing law and avoidance of unnecessary problems in conflicts of law or application of foreign law; and (4) the unfairness of burdening citizens in an unrelated forum with jury duty. *Piper Aircraft Co.*, 454 U.S. at 241, 250, 102 S.Ct. 252; *Gulf Oil Corp.*, 330 U.S. at 508–09, 67 S.Ct. 839; *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 837 (5th Cir.1993).

#### b. Analysis

■ The Ninth Circuit did not question any of the Court's public interest findings. In assessing the issue now, moreover, the Court concludes that California's interest is not strong enough to warrant retention of this case. Notably, the public interest alone may require dismissal:

> [E]ven when the private conveniences of the litigants are nearly in balance, a trial court has discretion to grant forum non conveniens dismissal upon finding that retention of jurisdiction would be unduly burdensome to the community, that there is little or no public interest in the dispute, or that foreign law will predominate if jurisdiction is retained.

*Pain*, 637 F.2d at 791–92. Given the confluence of all of the public interest factors, the Court concludes that the public interest weighs strongly in favor of dismissal and that this action must be **DISMISSED**.

*(i) Administrative Difficulties Flowing from Court Congestion*

Court congestion weighs in favor of granting Defendants' motion. Court congestion is apparently not a problem in Singapore, and Plaintiffs could expect to dispose of this action in less than a year from the date of the filing of the writ of summons. (*See* Xavier Decl. ¶ 15). By way of contrast, "[t]he Central District of California ... is one of the busiest districts in the country." *In re Air Crash Over the Taiwan Straits on May 25, 2002,* 331 F.Supp.2d at 1202. Even before the number of vacancies currently present on this Court, the median time in 2005 for civil cases from filing to trial was 20.5 months. (Han Decl. ¶ 11 & Ex. H [Judicial Caseload Profile]). Now, the Court expects that this period would be even longer. At this moment, there are five vacancies in the Central District, with the possibility that additional judges will take senior status in the next few months. In addition, fewer retiring judges are taking senior status, which further increases the workload of the active district court judges. Each active district court judge carries approximately 15 additional *civil* cases for each vacancy. In present circumstances, that amounts to about 75 additional *civil* cases per judge. The time from filing to disposition will only increase if the political branches of government do not address this serious vacancy problem.

In addition to imposing a burden on the community whose tax dollars would have to support the expense of trying this case and whose time would be taken up by sitting as jurors, moreover, Plaintiffs' suit would also impede the ability of local litigants to try their cases in this district. Plaintiffs do not contradict these arguments made by Defendants, (*see* Opp.; Reply at 14), and this public interest factor weighs in favor of dismissal.

*(ii) Local Interest in Having the Matter Decided Locally*

Plaintiffs' opposition to Defendants' motion with regard to the public interest hinges solely on this factor. Even so, Plaintiffs do not dispute that Singapore has extensive interest in this case, and California has only a negligible interest. (*See* Opp.; Reply at 14). Instead, Plaintiffs maintain that "[o]bviously, *any United States court* has an interest in the tortious conduct of these U.S. defendants, regardless of the place where that conduct causes injury and death." (Opp. at 15 (emphasis added)). In each of the cases Plaintiffs cite, however, the connection to the forum is much stronger than the connection here. *See, e.g., Lacey v. Cessna Aircraft Co.,* 862 F.2d 38, 40 (3d Cir.1988) (Pennsylvania corporation with its principal place of business in Pennsylvania manufactured subject exhaust system); *Carlenstolpe v. Merck & Co.,* 819 F.2d 33, 35 (2d Cir.1987) (accepting New York forum as reasonable when New Jersey manufacturer developed, produced, and tested the subject vaccine in New Jersey and Pennsylvania); *Ming v. Cordis Corp.,* 704 F.Supp. 217, 219 (S.D.Fla.1989) (Florida corporation designed, manufactured, and tested the subject products in Florida); *In re Air Crash Disaster at Mannheim, Germany on September 11, 1982,* 769 F.2d 115, 121 n. 7 (3d Cir.1985) ("Pennsylvania has the greatest interest in governing the liability of manufacturers *within its state* ") (emphasis added).

In addition, Plaintiffs' reliance on *Lacey, Carlenstolpe* and *Ming* is misplaced because none of these cases involved a foreign defendant or tortfeasor, and the claims in *Lacey* and *Ming* involved products that were manufactured in the forum where the action was brought. This provides the local controversy. Likewise, Plaintiffs' reliance on *In re Air Crash Di-*

*saster at Mannheim, Germany* is similarly unhelpful because that case did not address the *forum non conveniens* issue.

Otherwise, Plaintiffs seem to rely primarily on *In re Paris Air Crash of March 3, 1974,* 399 F.Supp. 732 (C.D.Cal.1975). In that case, the court dealt with a U.S.-designed and manufactured aircraft, and held that the United States had a greater interest in the case than the foreign domicile of the decedents because of the United States's interest in "insur[ing] the integrity of its products in this very competitive world market and also [ ] insur[ing] that anyone coming within the ambit of strict products liability shall know that its liability for a defect shall be uniform, no matter where or how the defect is discovered, through accident or otherwise." *Id.* at 746.

Despite the wisdom of these principles, *In re Paris Air Crash* is not persuasive because: (1) it was decided before *Piper Aircraft Co.* and any legal conclusions contrary to *Piper Aircraft Co.,* therefore, are not good law; and (2) in that case there was "no indication that the designers or manufacturers would be amenable to process or otherwise liable to suit in any other nation of the world," *id.* Because Defendants agree to submit to jurisdiction in Singapore and also establish that Singapore would honor their agreement, the cautionary message of *In re Paris Air Crash* is inapplicable here.

Accordingly, this factor weighs in favor of dismissal as well.

*(iii) Familiarity with · Governing Law and Avoidance of Unnecessary Problems in Conflicts of Law or Application of Foreign Law*

"The doctrine of *forum non conveniens* . . . is designed in part to help courts avoid conducting complex exercises in comparative law. . . . [T]he public interest factors point towards dismissal where the court would be required to 'untangle problems in conflict of laws, and in law foreign to itself.'" *Piper Aircraft Co.,* 454 U.S. at 251, 102 S.Ct. 252 (quoting *Gulf Oil Corp.,* 330 U.S. at 509, 67 S.Ct. 839).

In ruling on Singapore Airlines' Motion for Determination of Applicable Law on November 11, 2002, the Court addressed the issue of choice of law and indicated in a Supplement to that Order that it "intended to apply the law of the plaintiffs' domicile [instead of the law of the passenger's domicile] . . . ." (Han Decl. ¶ 14 & Ex. K [11/11/02 & 11/22/02 Choice of Law Rulings] (emphasis in original)). Since Plaintiffs are Dutch citizens, the Court in retaining jurisdiction would clearly have to interpret "law foreign to itself." *See Piper Aircraft Co.,* 454 U.S. at 251, 102 S.Ct. 252; *Gulf Oil Corp.,* 330 U.S. at 509, 67 S.Ct. 839.

Plaintiffs do not respond to this factor, (*see* Opp.; Reply at 14), and it also weighs in favor of dismissal based on *forum non conveniens.*

*(iv) Unfairness of Burdening Citizens in an Unrelated Forum with Jury Duty*

"Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Gulf Oil Corp.,* 330 U.S. at 508–09, 67 S.Ct. 839. Moreover, even if a forum does have a connection to the litigation, this fact does not mean that a motion to dismiss on *forum non conveniens* grounds should be denied. *See, e.g., Lueck,* 236 F.3d at 1147.

The Court agrees with Defendants that Singapore has the greatest interest in the outcome of this case and California has a virtually non-existent interest in part because the accident involved Singapore's national airline and Singaporean citizens. Additionally, many important witnesses are in Singapore and none of the manufacturing or other conduct at issue in this case occurred in California. As the Supreme Court has noted, "[a]dministrative difficulties follow for courts when litigation

is piled up in congested centers instead of being handled at its origin.... *There is a local interest in having localized controversies decided at home.*" *Gulf Oil Corp.*, 330 U.S. at 508–09, 67 S.Ct. 839 (emphasis added).

This case does not represent a local controversy for California. Plaintiffs are neither residents nor citizens of California, the accident did not occur here, the official investigations were conducted by Taiwanese and Singaporean authorities, and "[t]he only connection to California is that the plane was ultimately bound for Los Angeles but did not reach it." (Mot. at 23; *see* Han Decl., Ex. D [ASC Aircraft Accident Report for 10/31/00 Crash] at Bates 47). "This random attenuation," as Defendants properly term it, cannot defeat dismissal. (*See* Mot. at 23). As an example of this analysis, in *Lueck*, 236 F.3d at 1141, the Ninth Circuit affirmed a *forum non conveniens* dismissal even where one of the defendants resided in the chosen forum, noting:

> The citizens of Arizona certainly have an interest in the manufacturing of defective products by corporations located in their forum. However, this interest is slight compared to the time and resources the district court in Arizona would expend if it were to retain jurisdiction over this dispute. Furthermore, the interest in New Zealand regarding this suit is extremely high. The crash involved a New Zealand airline carrying New Zealand passengers....

*Lueck*, 236 F.3d at 1147. This reasoning is applicable to the situation here, and California's interest in deciding this case is especially negligible because no relevant products were manufactured or conduct occurred in this State.

The fact that the aircraft and some components were manufactured in the United States does not alter the analysis. Although a court must attend to the interest in providing a United States forum generally, "it is not improper for a court to consider contacts with the actual forum— i.e., California—when evaluating a motion to dismiss on forum non conveniens grounds." *In re Air Crash Over the Taiwan Straits on May 25, 2002*, 331 F.Supp.2d at 1203 (citing *Mercier v. Sheraton Int'l Inc.*, 981 F.2d 1345, 1355 (1st Cir.1992)).

The aircraft and some components were manufactured in Washington, West Virginia, and Arizona. (Han Decl., Ex. F [02/06/03 Lie Decl.]; Collier Decl., Ex. A [Yribarren 02/07/03 Decl.]). However, the connection to these states does not overwhelm the connection the case has to Singapore. As the Court of Appeals for the Seventh Circuit has observed:

> The fact that the aircraft was manufactured in the United States does not make the accident, involving a Portuguese airline, an airport in Portugal, predominantly Portuguese plaintiffs and Portuguese witnesses, any less a matter of local Portuguese interest. Plaintiffs cannot, by characterizing their causes of action as products liability claims, eliminate the very intimate relation of Portugal to the accident; the products liability claims arise in the context of a Portuguese accident.

*Macedo v. Boeing Co.*, 693 F.2d 683, 686 (7th Cir.1982); *see also Piper Aircraft Co.*, 454 U.S. at 260–61, 102 S.Ct. 252 (considering unwarranted commitment of judicial time and resources outweighing American interest in action); *Lueck*, 236 F.3d at 1147 (same); *Pain*, 637 F.2d at 792–93 (same); *Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345, 1355 (1st Cir.1992) (same).

In the end, the Court concludes that "[P]laintiffs cannot obscure the strength of the connection between their actions and [Singapore] by characterizing the cases as products liability suits against Boeing." *See In re Air Crash Over the Taiwan*

*Straits on May 25, 2002,* 331 F.Supp.2d at 1205 (citing *Nai–Chao,* 555 F.Supp. at 20; (additional citations omitted)).

On these bases, the Court finds that all of the public interest factors weigh strongly in favor of—and indeed necessitate—dismissal.

## V.

## CONCLUSION

For the reasons set forth herein, and with due respect and attention to the Ninth Circuit's direction, the Court concludes that Defendants' motion to dismiss on *forum non conveniens* grounds should be **GRANTED** because the private and public interest factors weigh strongly in favor of dismissal. Accordingly, this case is hereby **DISMISSED**.

IT IS SO ORDERED.