**In re AIR CRASH NEAR ATHENS, GREECE ON AUGUST 14, 2005.**

**No. 06 C 3439.**

United States District Court, N.D. Illinois.

Feb. 28, 2007.

Michael P. Verna, Pro se.

Charis Clerides, Pro se.

William Thomas Cahill, Bates McIntyre Larson, Jonathan R. Buck, Perkins Coie LLC, Chicago, IL, Allison Roseman Ken-

drick, Bruce D. Campbell, John D. Dillow, Perkins Coie, LLP, Seattle, WA, Andrew Harakas, Condon & Forsyth, LLP, New York City, Elizabeth Joan Cabraser, Lieff, Cabraser & Heimann, San Francisco, CA, Glenn Edward Mintzer, H. Russell Smouse, Louis Francis Angelos, Marlon Albert Figinski, Peter George Angelos, Law Offices of Peter G. Angelos, Baltimore, MD, Vincent J. Carter, Girardi & Keese, Los Angeles, CA, for Defendants.

Michael Patrick Verna, Bowles & Verna LLP, Walnut Creek, CA, Robert A. Clifford, Clifford Law Offices, P.C., Chicago, IL, for Air Crash Near Athens, Greece on August 14, 2005.

LINDBERG, District Judge.

## STATEMENT

### I. *Background*

On August 14, 2005, Helios Airways ("Helios") Flight 522 took off from Cyprus. The flight was to stop in Athens, Greece, prior to continuing to its ultimate destination of Prague, Czech Republic. During the flight to Athens, the airplane, a Boeing 737–300, failed to pressurize. As a result of the failure to pressurize, the pilots were either rendered unconscious or killed. The airplane crashed near Athens, and all of the 121 crew members and passengers were killed.

The ninety plaintiffs in this multidistrict litigation are representatives of ninety-two of the individuals killed in the crash. These plaintiffs brought a total of seven actions against Boeing in the district courts for the Northern District of Illinois, the Central District of California, and the Eastern District of Pennsylvania. Plaintiffs' master complaint alleges wrongful death claims based on strict product liability, negligence, and breach of warranty. Defendant contends that pilot and maintenance errors by Helios, which is not a party to these actions, were to blame for the crash. Pursuant to the orders of the Judicial Panel on Multidistrict Litigation, this Court is handling the pretrial proceedings for all of the actions.

Defendant has moved to dismiss these actions on the grounds of forum non conveniens. Defendant argues that either Cyprus or Greece would provide a more convenient forum for this litigation than an American court.

### II. *Motion to Strike Reply Brief*

■■■■ As an initial matter, the Court considers plaintiffs' motion to strike defendant's reply brief and supporting declarations. The declarations of Dionysios Kondylis and Dimitris Emvalomenos are stricken, since there is no reason these witnesses', information could not have been offered with defendant's initial brief. *See Black v. TIC Inv. Corp.*, 900 F.2d 112, 116 (7th Cir.1990). The lengthy list of cases in Exhibit D to the supplemental declaration of Allison Kendrick is stricken as an improper attempt to evade the page limitation this Court imposed on defendant's reply brief. The supplemental declaration of Richard Breuhaus is stricken, on the basis that large portions of it constitute either argument that should have been presented in defendant's brief, or information that could have been offered in Breuhaus's original declaration. The supplemental declarations of Dimitrios (Dimitrakis) Stylianides, Alecos Markides, and Stelios Koussoulis are stricken, because these expert witnesses had a full opportunity to present their opinions in their original declarations. The portions of defendant's reply brief that rely on the stricken declarations are also stricken.

### III. *Forum Non Conveniens Analysis*

■■■■ Under the doctrine of forum non conveniens, a court may dismiss a case

"over which it would normally have jurisdiction if it best serves the convenience of the parties and the ends of justice." *In re Bridgestone/Firestone, Inc.,* 420 F.3d 702, 703 (7th Cir.2005) (quoting *Kamel v. Hill-Rom Co.,* 108 F.3d 799, 802 (7th Cir.1997)). In a forum non conveniens analysis, a court first examines whether an adequate alternative forum is available. *Id.* at 704. If such a forum exists, the court then balances various private and public interest factors relating to the proper location of the litigation. *Id.* The defendant bears the burden of persuading the court that a case should be dismissed on the grounds of forum non conveniens. *In re Ford Motor Co., Bridgestone/Firestone N. Am. Tire,* 344 F.3d 648, 652 (7th Cir.2003).

### A. *Existence of an Adequate Alternative Forum*

The Court first examines whether the Cyprus and Greek courts are "available." A forum is available if "all parties are amenable to process and are within the forum's jurisdiction." *In re Bridgestone/Firestone, Inc.,* 420 F.3d at 704. In this case, defendant has agreed to consent to the jurisdiction of the Greek or Cyprus courts, if the actions are dismissed here. Defendant has offered expert opinions that the courts in Cyprus and Greece would have jurisdiction over it, if it appeared voluntarily and did not contest jurisdiction. Plaintiffs do not dispute the availability of Cyprus or Greece. The Court finds that both of these fora are "available." *See Kamel,* 108 F.3d at 803 (finding Saudi Arabia to be an available forum where defendants consented to the jurisdiction of its courts).

Next, the Court considers whether Cyprus and Greece are "adequate." The standard for establishing the adequacy of a forum is easily met: a forum is adequate if "the parties will not be deprived of all remedies or treated unfairly." *In re Bridgestone/Firestone, Inc.,* 420 F.3d at 704. An alternative forum need not provide the same range of remedies that are available here, as long as it provides "some potential avenue for redress." *Kamel,* 108 F.3d at 803 (quoting *Ceramic Corp. of Am. v. Inka Mar. Corp.,* 1 F.3d 947, 949 (9th Cir.1993)).

Defendant has offered evidence that both Cyprus and Greece offer potential avenues for redress. Although the parties dispute whether plaintiffs could assert their strict product liability claims in Cyprus or Greece, plaintiffs do not dispute that they could assert claims based on a negligence theory in both fora. Recoverable damages in Cyprus include damages for loss of economic support, bereavement damages up to 10,000 Cyprus Pounds (approximately $23,000 U.S. under the current exchange rate) to a limited class of family members, and funeral expenses; the parties dispute whether damages for pain and suffering are recoverable in Cyprus. Damages may be recovered in Greece for loss of economic support, mental distress, and funeral expenses.

While the procedures in the courts in Cyprus and Greece differ from those of the United States courts, adequate procedural safeguards exist in both Cyprus and Greece. Cases in Cyprus are adversarial proceedings before a judge that include the presentation of documentary evidence and oral or written testimony, and cross-examination. In Greece, cases are tried before a multi-member court, in which each party bears the burden of proving its own arguments and rebutting its opponent's arguments; the court also may question the parties and witnesses. There is a right to appeal in both Cyprus and Greece.

Although plaintiffs argue that certain limitations in the Cyprus and Greek legal

systems reflect a lesser public interest in those fora, plaintiffs do not contend that these limitations render either Cyprus or Greece inadequate. Indeed, the limitations plaintiffs cite would not be enough to establish that the alternative fora are inadequate. *See, e.g., Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (smaller potential damages award and absence of strict liability not enough to render forum inadequate); *Mercier v. Sheraton Int'l, Inc.,* 981 F.2d 1345, 1352–53 (1st Cir.1992) (differences in discovery procedures not enough to render forum inadequate); *Lockman Found. v. Evangelical Alliance Mission,* 930 F.2d 764, 768 (9th Cir.1991) (lack of jury trial in alternative forum not enough to render forum inadequate). Nor would a lack of prior experience in handling complex aviation accident litigation by the courts and attorneys in Cyprus and Greece render those fora inadequate. The Court finds that Cyprus and Greece are both "adequate."

### B. *Plaintiffs' Choice of Forum*

 Having found that both Cyprus and Greece are adequate and available, the Court next weighs various private and public interest factors against the deference that is due plaintiffs' choice of forum. Ordinarily, there is a strong presumption in favor of a plaintiff's choice of forum. *Piper Aircraft Co.,* 454 U.S. at 255, 102 S.Ct. 252. However, a foreign plaintiff's choice to bring suit in the United States is entitled to less deference because trial of a foreign plaintiff's claims in the United States is likely to be less convenient. *Id.* at 256. The presence of Ameri-

can plaintiffs, by itself, does not bar forum non conveniens dismissal. *See Cheng v. Boeing Co.,* 708 F.2d 1406, 1411 (9th Cir. 1983).

 Of the ninety plaintiffs in this case, only two are United States residents.[1] It appears that approximately five plaintiffs may be Greek.[2] The remaining plaintiffs apparently reside in Cyprus. Although the Greek plaintiffs are entitled to status equal to Americans under a treaty between the United States and Greece, *see* Treaty of Friendship, Commerce and Navigation, Aug. 3, 1951, U.S.-Greece, 5 U.S.T. 1829, it is appropriate to consider that it is still likely to be less convenient for the Greek plaintiffs to pursue their claims in the United States. *See In re Ford Motor Co.,* 344 F.3d at 653.

### C. *Private Interest Factors*

 The Court next examines the private interest factors. Relevant private interest factors include: the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*In re Bridgestone/Firestone, Inc.,* 420 F.3d at 704 (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)). The ability to implead other entities is an additional private interest factor. *See Piper Aircraft,* 454 U.S. at 259, 102 S.Ct. 252.

---

1. These two plaintiffs are Cyprus citizens who reside in Pennsylvania; the decedent whom they represent was an American citizen residing in Cyprus.

2. The parties discuss "Greek plaintiffs," but do not identify how many of the plaintiffs are Greek. Five of the decedents were residents and citizens of Greece, however, and therefore a similar number of plaintiffs may be as well.

1. *Relative ease of access to sources of proof*

As an initial matter, both sides attempt to prematurely limit the issues in this litigation. Defendant states that Helios has agreed not to contest liability in any wrongful death or property damage action filed against Helios in Cyprus or Greece. According to defendant, as a result of Helios's agreement, damages are the only remaining issue, and the majority of damages evidence is located in Cyprus and Greece.

Meanwhile, plaintiffs contend that there is no real dispute between the parties over facts relating to Helios's conduct, and offer to stipulate to the conclusions of the Greek Air Accident Investigation and Aviation Safety Board (the "AAIASB"). According to plaintiffs, their product liability claim is the focus of these cases, and the evidence and witnesses most critical to that claim are located in the United States, where the airplane was designed and manufactured.

Neither argument is persuasive. Although Helios may have agreed not to contest liability, Boeing—the defendant here—has not. Plaintiffs are entitled to pursue their claims against Boeing instead of settling with Helios. At the same time, defendant is entitled to pursue its defense.

Even putting these arguments aside, the parties disagree over what issues are central to the litigation, and therefore, what evidence is relevant. At this early stage, however, the Court cannot determine what the ultimate focus of the litigation will be. In its forum non conveniens analysis, the Court "must do no more than delineate the likely contours of the case by ascertaining, among other things, the nature of the plaintiff's action, the existence of any potential defenses, and the essential sources of proof." *Lacey v. Cessna Aircraft Co.,* 932 F.2d 170, 181 (3d Cir.1991).

The Greek investigation into the crash by the AAIASB faulted both Helios and Boeing. Specifically, the AAIASB concluded that the direct causes for the crash were the Helios flight crew's failure to recognize that the cabin pressurization mode selector was in the manual position, and the flight crew's failure to properly identify the reason for the activation of a warning horn. The AAIASB also concluded that a contributing factor to the crash was the failure to return the pressurization mode selector to the automatic position after maintenance on the airplane. The AAIASB concluded that a latent cause of the crash was the ineffectiveness and inadequacy of measures taken by Boeing in response to previous pressurization incidents in the 737 aircraft, both with regard to modifications to aircraft systems and guidance to crews.

The Court finds that at this point there is support in the record for both plaintiffs' product liability claim against defendant, and for defendant's defense that Helios was responsible for the crash. Therefore, sources of proof on all these issues are relevant.

Most, if not all of the evidence and witnesses with knowledge relating to the design and manufacture of the Boeing 737–300 series aircraft and its component parts is located in the United States, along with defendant's manuals, warnings, preflight checklists and subsequent revisions. In addition, documents and witnesses relating to defendant's investigations of, and responses to prior pressurization incidents are located in the United States. Some Boeing employees and United States government officials participated in the investigation of the crash, and are located in the United States. Finally, components of the accident airplane's pressurization and bleed air systems were analyzed in Boeing's laboratory facilities in the United

States. Defendant has agreed to make relevant evidence or witnesses in its possession, custody, or control available in Cyprus or Greece.

Most of the damages evidence in this litigation is located in Cyprus. Eighty-six of the ninety-two decedents were residents of Cyprus at the time of the crash, and an additional three decedents were citizens and residents of both Cyprus and Greece.[3] Two hundred eleven of the 287 decedents' beneficiaries identified by plaintiffs during discovery are residents of Cyprus.[4]

In addition, since Helios is a Cyprus-based airline, most evidence relating to Helios is located in Cyprus. Helios management personnel and witnesses with knowledge relating to the flight crew, the accident airplane, and Helios's treatment of safety issues are located in Cyprus. Information relating to maintenance of the accident airplane,[5] and Helios's manuals are also located in Cyprus. Finally, records and witnesses relating to the Cyprus Department of Civil Aviation's oversight of Helios's operations are located in Cyprus.

Most of the evidence relating to the investigation of the crash is located in Greece. This evidence includes the wreckage of the accident airplane, information relating to the examination of the wreckage, and information relating to the postmortem examinations of the decedents. Members of the AAIASB who conducted the investigation are located in Greece. Greek Air Force pilots who intercepted the airplane in the air before the crash are located in Greece, along with reports relating to their contact with the airplane. Finally, damages evidence relating to the Greek decedents is located in Greece.

Plaintiffs argue that defendant's participation in the AAIASB's investigation is an adequate substitute for access to records from that investigation in Cyprus and Greece. The Court disagrees. *See Van Schijndel v. Boeing Co.*, 434 F.Supp.2d 766, 777 (C.D.Cal.2006) (stating that "the fact that Boeing may have participated or assisted in some form in the investigation of the crash does not imply that Defendants have access to any of the other records of that investigation"). Given defendant's agreement to produce its documents and witnesses in Cyprus and Greece, and the location of the vast majority of other evidence in Cyprus and Greece, the Court finds that the relative ease of access to proof favors both Cyprus and Greece over the United States courts in which these cases were brought.[6] *See id.* at 778.

2. *Availability of compulsory process for the attendance of unwilling witnesses*

The Court next examines the factor of availability of compulsory process and the

---

**3.** Two of the remaining decedents were residents and citizens of Greece, and the residency and citizenship of one of the remaining decedents is unknown.

**4.** Fifteen of the remaining beneficiaries are Greek residents, two are residents of the United States, and the residency of the remaining beneficiaries is unknown.

**5.** Some witnesses with information relating to maintenance of the accident airplane are also located in the United Kingdom.

**6.** The Court also notes that plaintiffs have already encountered difficulties getting information from Cyprus and Greece to the United States in this litigation. On October 18, 2006, plaintiffs moved for additional time to respond to defendant's interrogatories and requests for admission. Although these discovery requests sought such basic information as the decedents' citizenship and residency, and the location of employment, banking, and medical records, plaintiffs stated that they had been unable to finalize their responses in a timely fashion, in part "[d]ue to the language and time difference between the plaintiffs and their counsel."

cost of obtaining attendance of willing witnesses.

As noted above, defendant has agreed to make all relevant witnesses in its control available in Cyprus or Greece. Compulsory process is available in Cyprus and Greece, although plaintiffs contend that this power is limited in practice. European Union regulations would provide the procedure for obtaining evidence from Greece for use in Cyprus, and vice versa.

Helios has declined to voluntarily make its witnesses and evidence available in this litigation, and Helios's witnesses and the other nonparty witnesses in Cyprus and Greece would not be subject to compulsory process here. Therefore, the parties would need to use the time-consuming procedures prescribed in the Hague Convention to obtain these witnesses' testimony for use in litigation in the United States, and such testimony would not be live. *See* Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, *opened for signature* Mar. 18, 1970, 23 U.S.T. 2555.

 The Court finds that the availability of compulsory process slightly favors dismissal. *See DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 30 (2d Cir.2002) (concluding that district court had not abused its discretion in finding that availability of compulsory process factor weighed in favor of forum non conveniens dismissal, given large number of witnesses who would only appear in videotaped depositions obtained through letters rogatory); *Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp.*, 421 F.Supp.2d 741, 769 (S.D.N.Y.2006) (large number of nonparty witnesses, the court's natural preference for live testimony, and time-consuming nature of using letters rogatory weighed in favor of dismissal).

3. *Cost of obtaining attendance of willing witnesses*

 The Court finds that the cost of transporting witnesses is a neutral factor, since such costs will be incurred no matter where this litigation proceeds.

4. *Possibility of view of premises*

 Neither side argues that it would be useful to view the crash site in Greece. The Court finds that the possibility of view of premises is a neutral factor in this case.

5. *Other practical problems that make trial of a case easy, expeditious and inexpensive*

a. *Ability to implead other entities*

Defendant argues that Helios cannot be brought into this action in the United States, and that this factor favors dismissal. The parties agree that under the Montreal Convention, plaintiffs cannot sue Helios in the United States. *See* Convention for the Unification of Certain Rules for Int'l Carriage by Air, *opened for signature* May 28, 1999, *reprinted in* S. Treaty Doc. No. 106–45, 1999 WL 33292734. Defendant does not argue that the Montreal Convention would prevent it from suing Helios in the United States for contribution or indemnification. *See In re Air Crash near Nantucket Island, Mass., on Oct. 31, 1999*, 340 F.Supp.2d 240, 242–44 (E.D.N.Y.2004) (holding that predecessor treaty to the Montreal Convention would not bar United States jurisdiction over defendant Boeing's contribution and indemnity claims against third-party airline). Instead, defendant argues that it cannot bring Helios into this action here because no United States court has personal jurisdiction over Helios.

Plaintiffs respond that Helios is subject to specific personal jurisdiction in Washington based on Helios's entry into a con-

tract with defendant, and Helios's training activities in Washington. Plaintiffs contend that if defendant sued Helios in the Western District of Washington, these cases could be transferred to that district pursuant to 28 U.S.C. § 1404. Plaintiffs do not dispute that Helios could be sued in either Cyprus or Greece.

 A federal district court may exercise personal jurisdiction "only if a court of the state in which it sits would have such jurisdiction." *Klump v. Duffus,* 71 F.3d 1368, 1371 (7th Cir.1995) (quoting *Wilson v. Humphreys (Cayman) Ltd.,* 916 F.2d 1239, 1243 (7th Cir.1990)). A Washington court has specific personal jurisdiction over a party if: (1) the party purposefully committed some act or consummated some transaction in Washington; (2) the cause of action arose from, or was connected with this act or transaction; and (3) the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *See Raymond v. Robinson,* 104 Wash.App. 627, 15 P.3d 697, 702 (2001).

██ Helios does not fly to and from the United States. However, on January 19, 2000, defendant and Helios entered into a Customer Services General Terms Agreement relating to the airplane that is the subject of this action. In addition, Helios employees received flight crew training in Washington. Helios employees also attended meetings in Washington.

Helios's execution of a contract with a Washington resident, without more, is not enough to meet the purposeful act requirement. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478–79, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). To determine whether Helios purposefully established contacts with Washington as a result of the contract, the Court must examine the circumstances of the entire transaction, including prior negotiations, contemplated future consequences, the contract's terms,

and the parties' actual course of dealing. *See id.* at 479, 105 S.Ct. 2174. The presence of a choice-of-law provision in a contract is relevant, but not dispositive. *Id.* at 482, 105 S.Ct. 2174.

Helios's contract with defendant is governed by Washington law, and allows for performance in Washington under some circumstances. The contract does not contain a forum selection clause, and there is no evidence in the record before the Court as to defendant and Helios's prior negotiations, contemplated future consequences, or actual course of dealings.

Although three Helios employees attended a "Spares Provisioning Conference" in Washington in late 1999 to early 2000, and one Helios employee attended a "737 NG Fleet Team Meeting" in Washington in May 2001, it is unclear from the record before the Court whether plaintiffs' claims are related to these contacts. Helios employees traveled to Washington to take delivery of an airplane in March 2001, and attended a meeting in Washington in April 2001 regarding that airplane; however, it appears that that airplane is not the airplane that is the subject of this litigation.

Under the record that is before the Court, it is possible that Helios made sufficient minimum contacts with Washington, related to plaintiffs' claims, that would support concluding that a federal court in Washington could exercise specific personal jurisdiction over Helios. The Court finds that defendant has not established that this factor weighs in favor of dismissal.

b. *Efficiency*

██ Helios has sued Boeing in Greece, claiming that Boeing was responsible for defects in the accident airplane, and that these defects caused the crash. Defendant

argues that proceeding with this litigation in the United States would result in inefficient and duplicative fact-finding, and risks the possibility that the Greek and American courts would reach inconsistent results. Plaintiffs do not respond to this argument. The Court finds that the pendency of litigation between Helios and Boeing in Greece that raises claims similar to those raised in this litigation is a factor that favors dismissal. *See Van Schijndel,* 434 F.Supp.2d at 780.

### c. *Translation*

██ Plaintiffs argue that trial of these actions in Cyprus or Greece would be a "logistical nightmare" because English-language documents would have to be translated into Greek for trial in either forum. Court proceedings in both Cyprus and Greece are conducted in Greek, although it appears that under some circumstances Cyprus courts may permit the submission of documents in English. On the other hand, Greek-language documents would have to be translated into English for trial in the United States. The Court finds that the need to translate documents is a neutral factor.

After weighing the relevant private interest factors, the Court concludes that the private interest factors favor dismissal.

### D. *Public Interest Factors*

The Court next weighs the public interest factors. Relevant public interest factors include: the administrative difficulties stemming from court congestion; the local interest in having localized disputes decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law;

and the unfairness of burdening citizens in an unrelated forum with jury duty. *In re Bridgestone/Firestone, Inc.,* 420 F.3d at 704 (quoting *Kamel,* 108 F.3d at 803).

### 1. *Administrative difficulties stemming from court congestion*

The Court first considers the administrative difficulties stemming from court congestion in the United States, as compared to Cyprus and Greece. The median time to trial in the Northern District of Illinois between April 1, 2004 and March 31, 2005 was twenty-four months.

Defendant's experts claim that cases generally go to trial within two to three years after summons issues in Cyprus, and within ten to twelve months in Greece (with a decision issuing three to four months after trial in Greece). Defendant's experts provide no basis for their conclusions, although they acknowledge that "it is difficult to estimate how long the proceedings ... will last" (Cyprus) and that "there are many parameters affecting the overall length of the proceedings" (Greece).

Plaintiffs' expert on the Cyprus legal system offers only a "loose[ ] assess[ment]" that in Cyprus, a case takes eight to ten years from filing to completion of the appeals process, based on a review of only the most recent ten decisions of the Cyprus Supreme Court. Plaintiffs offer no assessment of the length of time to trial in Cyprus. Plaintiffs offer no evidence as to the length of time to trial in Greece, and their expert states that Greek judicial statistics are kept "in only rough terms" and "offer answers only in limited areas."

██ Since neither party has offered useful evidence relating to the length of time to trial in Cyprus or Greece, the Court finds that the factor of administrative difficulties stemming from court congestion does not favor dismissal.

### 2. Local interest in having localized disputes decided at home and the unfairness of burdening citizens in an unrelated forum with jury duty

Next, the Court examines the local interest in deciding these cases in Cyprus or Greece, as compared to the American courts.

■■■■ Cyprus has an extremely strong interest in this litigation. As noted above, nearly all of the decedents were residents of Cyprus at the time of the crash, and Helios is a Cypriot airline. *See Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1147 (9th Cir.2001) (interest of New Zealand "extremely high" compared to District of Arizona, in case involving deaths of New Zealand residents in crash of New Zealand airline). Cyprus's interest in the crash is further evidenced by the fact that Cyprus has instituted a criminal investigation into the crash. *See Reers v. Deutsche Bahn AG*, 320 F.Supp.2d 140, 160 (S.D.N.Y.2004) (France's "active interest" evident · from pending criminal investigation).

Greece also holds a strong interest in these actions. The crash occurred on Greek soil while the airplane was en route to Athens, and killed several Greek residents. *Piper Aircraft Co.*, 454 U.S. at 260, 102 S.Ct. 252 (interest of Scotland "very strong" compared to Middle District of Pennsylvania, in case involving deaths of Scottish residents in crash of airplane in Scotland). In addition, a Greek agency conducted an official investigation, and Greece has also instituted a criminal investigation.

By contrast, the interest of the United States courts is not nearly as strong as the interest of either Cyprus or Greece. Although one of the decedents was an American citizen, the vast majority of decedents were not. In addition, while the United States has some interest in deterring the production of defective products here, the amount of deterrence that would result from proceeding with the litigation in the United States is "likely to be insignificant." *See Piper Aircraft Co.*, 454 U.S. at 260–61, 102 S.Ct. 252. Nor is the mere fact that Boeing 737 airplanes regularly fly in American airspace enough to outweigh the interests of Cyprus and Greece. *See Nai–Chao v. Boeing Co.*, 555 F.Supp. 9, 20 (N.D.Cal.1982), *aff'd Cheng v. Boeing Co.*, 708 F.2d 1406 (9th Cir.1983).

Plaintiffs argue that the Court should consider limitations of the legal systems of Cyprus and Greece as a public interest factor showing that the United States has a greater interest in the litigation. Plaintiffs cite no authority for this argument, and the Court finds it unpersuasive. *See Blanco v. Banco Indus. de Venezuela, S.A.*, 997 F.2d 974, 982 (2d Cir.1993) (warning that "[i]t is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation"). This Court has already found the legal systems of Cyprus and Greece to be adequate.

The Court finds that both Cyprus and Greece have a much stronger local interest in this litigation than the United States. For that reason, it would be unfair to burden the citizens of Illinois, California, and Pennsylvania with jury duty in these cases.

### 3. Familiarity with governing law and avoidance of unnecessary problems in conflicts of law or application of foreign law

■■■■ These cases, like many aircraft disasters, pose complex choice of law issues. *See In re Air Crash at Belle Harbor, New York on Nov. 12, 2001*, No. MDL 1448, 2006 WL 1288298, at *4 (S.D.N.Y. May 9, 2006) (characterizing the selection of applicable law in aircraft disaster litigation as "a vexing issue"). The doctrine of forum non conveniens "is designed in part

to help courts avoid conducting complex exercises in comparative law." *Piper Aircraft Co.*, 454 U.S. at 251, 102 S.Ct. 252. Accordingly, "the public interest factors point towards dismissal where the court would be required to 'untangle problems in conflict of laws, and in law foreign to itself.'" *Id.* (quoting *Gulf Oil Corp.*, 330 U.S. at 509, 67 S.Ct. 839). Although foreign choice of law is a relevant factor favoring dismissal, at this stage the Court need not definitively resolve the issue of which forum's law will apply. *See Varnelo v. Eastwind Transp., Ltd.*, No. 02 Civ.2084, 2003 WL 230741, at *27 (S.D.N.Y. Feb. 3, 2003) (collecting cases).

■ Here, although defendant and plaintiffs disagree as to which forum's law will apply, neither side offers a thorough analysis of the question. Accordingly, the Court will not undertake a lengthy choice of law analysis. Even if it determined that the law of an American state applied, however, the Court would not find that this factor would outweigh the other factors that favor dismissal.

## IV. *Conclusion*

The Court recognizes the deference due plaintiffs' choice of forum, but finds that this deference is greatly outweighed by other relevant factors. The Court finds that Cyprus would be a far more convenient forum for this litigation than the United States because of the ease of access to sources of proof in Cyprus and the strong public interest in having these actions decided in Cyprus. The Court also finds that Greece would be a far more convenient forum for this litigation than the United States because of the ease of access to sources of proof in Greece, the pendency of related litigation between Helios and Boeing in Greece, and the strong public interest in having these actions decided in Greece. Having carefully weighed the private and public interest factors, the Court concludes that dismissal is appropriate.

Defendant's motion to dismiss is granted, subject to the following conditions:

1. Defendant shall submit to service of process and jurisdiction in these actions refiled in Cyprus or Greece;
2. Defendant shall waive any statute of limitations defense to any currently pending action that is refiled in Cyprus or Greece within 120 days from the date of the order of dismissal;
3. Defendant shall provide plaintiffs with access, in Cyprus or Greece, to all evidence and witnesses in their custody or control that are relevant to any issue raised in actions refiled in Cyprus or Greece;
4. Defendant shall bear the cost of translating English-language documents in its custody or control into Greek as necessary; and
5. Defendant shall pay any damages awarded by the Cyprus and/or Greek courts in the refiled actions, subject to any right of appeal.